**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **RAMSEY COULTER** | : | |
| | : | |
| v. | : | **CIVIL ACTION NO. 20-1820** |
| | : | |
| **SAGESTREAM, LLC** | : | |

McHUGH, J.                                                          NOVEMBER 17, 2020

**MEMORANDUM**

### I.        Introduction

This is a putative class action arising under the Fair Credit Reporting Act (FCRA).  Plaintiff Ramsey Coulter asserts that Defendant SageStream, LLC's, response to a disputed credit report entry was inadequate under the statute.  First, Plaintiff alleges that SageStream violated section 1681e(b) of FCRA, which requires that consumer reporting agencies follow reasonable procedures to assure accuracy of information in consumer reports.  Second, Plaintiff alleges that Defendant violated section 1681i of FCRA, which outlines Defendant's obligations to conduct a reinvestigation of Plaintiff's file once notified of a consumer's dispute. Finally, Plaintiff alleges various procedural deficits in the letter SageStream sent reporting the results of its reinvestigation, again invoking section 1681i.

Defendant responds with a threshold argument under the Supreme Court's decision in *Spokeo*, contending that Plaintiff lacks standing to bring this action altogether, due to a failure sufficiently to articulate any cognizable injuries. But as applied by the Third Circuit, *Spokeo* did not dramatically alter the law on standing, with the result that Coulter's core claims survive. Sagestream further moves to dismiss for failure to state a claim upon which relief can be granted.

As to Plaintiff's more inventive claims, the motion will be granted.  As to the central allegations of Coulter's complaint, however, the motion will be denied.

## II.      Factual Background

Plaintiff filed for Chapter 7 bankruptcy in April 2015, and Plaintiff's Lending Club credit card account, along with other accounts, was included in the bankruptcy proceedings.  Am. Compl. ¶ 6-7, ECF 4.  Three years later, on or around April 24, 2018, Plaintiff asserts he reviewed his credit report from SageStream and found that his now defunct Lending Club account, along with debts purportedly owed on the account, were erroneously still listed.  *Id.* ¶ 8-9.  The report incorrectly stated that Plaintiff owed $5,811 on this account in 2016 and $6,067 in 2017, even though the debt had been discharged through the bankruptcy.  *Id.* ¶ 9.  Plaintiff sent a dispute letter dated April 24, 2018 to Defendant regarding this alleged mistake.  *Id.* ¶ 10.

Sagestream responded to Plaintiff's dispute in a letter dated July 26, 2018.  *Id*. ¶ 16; Def. Reinvestigation Letter, ECF 6.[1]  Plaintiff alleges that this response was untimely under the statute, which requires that a reinvestigation be completed within thirty days.  Am. Compl. ¶ 16; 15 U.S.C. § 1681i(a)(1)(A).  Plaintiff further alleges that Defendant either did not contact Lending Club in a timely fashion, or upon receiving a response from Lending Club, did not provide the results of the investigation to Plaintiff.  *Id.* ¶ 17.  Plaintiff further alleges that Defendant did not delete the inaccurate information from his credit report.  *Id.* ¶ 33.

Plaintiff also asserts that the letter he received from Defendant failed to contain appropriate disclosures required under FCRA, particularly with regard to notifying Plaintiff that he could

---

[1] Both Defendant and Plaintiff both refer to Defendant's July 26, 2018 letter being attached to Plaintiff's Amended Complaint as Exhibit A, but no such letter was attached. The letter appears to have been uploaded by Defendant at ECF 6 and I will refer to this letter throughout.

request further information about the procedures used by Defendant to assess his dispute. *Id.* ¶¶ 18-25. Moreover, Plaintiff contends that Defendant's letter did not state with the requisite specificity the statutory timelines for furnishing notification of disputed or deleted information to third parties at a disputant's request and did not expressly say that notice could be provided for disputed (as opposed to deleted) information. *Id.* ¶¶ 26-33.

Finally, Plaintiff asserts an alternative theory of liability based on Defendant operating as a "reseller" of information obtained from another consumer reporting agency, Innovis Data Solutions. *Id.* ¶¶ 36-38. Once again, Plaintiff maintains that Sagestream did not make the disclosures required under the statute. *Id.* ¶¶ 39-43. As a result of Defendant's errors, Plaintiff avers that he "suffered actual damages, mental anguish, frustration, humiliation, and embarrassment." *Id.* ¶ 73.

### III.   Standing

Federal courts are courts of limited jurisdiction, and the plaintiff bears the burden of establishing that subject-matter jurisdiction exists. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). In order to establish jurisdiction, a plaintiff must show that she has standing, such that a "case or controversy" exists, as is required by Article III of the U.S. Constitution. *Id.* at 559. There are three elements of Article III standing: "First, an injury in fact, or an invasion of a legally protected interest that is concrete and particularized. Second, a causal connection between the injury and the conduct complained of. And third, a likelihood that the injury will be redressed by a favorable decision." *In re Horizon Healthcare Servs. Data Breach Litig.*, 846 F.3d 625, 633 (3d Cir. 2017) (hereafter "Horizon") (citing *Lujan*, 504 U.S. at 560-61). These requirements do not change in the class action context; rather, one of the named plaintiffs must establish Article III standing. *Id.* at 634.

Defendant argues that Plaintiff has not established standing, and that I am thus deprived of subject-matter jurisdiction over this case.  Def. Motion to Dismiss at 2, ECF 9-1.[2]  Defendant argues that Plaintiff has not shown the first element of standing— an injury in fact.  *Id.* Defendant's challenge is a facial attack (rather than a factual one) because Defendant does not contest the facts alleged in the complaint, but rather argues that the facts, as presented, are not sufficient to confer standing as a matter of law.  *See Hartig Drug Co. v. Senju Pharm. Co.*, 836 F.3d 261, 268 (3d Cir. 2016).

Intangible injuries may suffice to confer standing, as long as they are particularized and concrete.  *See Spokeo v. Robins*, 136 S. Ct. 1540, 1548 (2016).   In *Spokeo*, the Supreme Court clarified that in analyzing whether a plaintiff has shown an "injury in fact," courts must not confuse the distinct requirements that the injury must be both particularized and concrete.  *Id*.  An injury is particularized if it "affect[s] the plaintiff in a personal and individual way."  *Id.* (internal quotations omitted).  "A 'concrete' injury must be 'de facto'; that is, it must actually exist."  *Id.* But a concrete injury need not be "tangible."  *Id.* at 1549.  In deciding whether an intangible injury is concrete, courts should look at whether Congress has elevated the harm to be legally cognizable through statute, and at whether the harm "has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts."  *Id.*  Under this analysis, "the violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact.  In other words, a plaintiff in such a case need not allege any *additional* harm beyond the one Congress has identified."  *Id.*  However, the Court cautioned

---

[2] Defendant has not argued that Plaintiff lacks prudential standing, and I find that prudential standing exists here. *See Fed. Election Comm'n v. Akins*, 524 U.S. 11, 20 (1998) ("[P]rudential standing is satisfied when the injury asserted by a plaintiff arguably falls within the zone of interests to be protected or regulated by the statute in question.") (internal alterations and quotations omitted).

that the congressional power to elevate intangible harms into concrete injuries is not without limits, and that a "bare procedural violation, divorced from any concrete harm" cannot "satisfy the injury-in-fact requirement of Article III." *Id.*

In the context of FCRA, the Court in *Spokeo* provided two examples of procedural violations that "probably" would not result in any concrete harm and are not sufficient to cause an injury-in-fact: (1) when an agency fails to provide notice to a user of the agency's consumer information, but the information is entirely accurate, or (2) incorrect reporting by an agency of a consumer's zip code, without more. *Id.* at 1550. Beyond those two examples, however, the Court warned that it "express[ed] no view about any other types of false information that may merit similar treatment." *Id.* n.8. The Court remanded for the Ninth Circuit to consider whether the statutory violations alleged in that case, namely the publication of inaccurate biographical information about the plaintiff, created a concrete injury. *Id.* at 1550.

As noted by both Plaintiff and Defendant, district courts around the country since *Spokeo* have grappled with the question of when certain violations of FCRA or other consumer protection statutes create concrete injuries such that plaintiffs have standing, and the results have not always been consistent. In the Third Circuit, however, there are several precedential decisions since *Spokeo* that define the contours of the injury-in-fact requirement.

The Third Circuit has repeatedly held that *Spokeo* did not "intend to change the traditional standard for the establishment of standing" and "did not alter" the court's approach to the analysis. *Horizon*, 846 F.3d at 638 (3d Cir. 2017) (citing *In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262, 273 (3d Cir. 2016)) (hereinafter "Nickelodeon"). These cases have been summarized at length by Third Circuit decisions and in my own previous decisions, and so I will not belabor their history here. *See Kamal v. J. Crew Grp. Inc.*, 918 F.3d 102, 111-12 (3d Cir. 2019); *Tonge v.*

*Fundamental Labor Strategies, Inc.*, 277 F. Supp. 3d 809, 817-19 (E.D. Pa. 2017) (McHugh, J.). It is enough to say that the Circuit has repeatedly examined consumer protection statutes, and the majority of these cases[3] "have been decidedly in favor of allowing individuals to sue to remedy violations of their statutory rights, even without additional injury." *Long v. Septa*, 903 F.3d 312, 322 (3d Cir. 2018). The court has instructed that the "[w]hen one sues under a statute alleging 'the very injury [the statute] is intended to prevent,' and the injury 'has a close relationship to a harm . . . traditionally . . . providing a basis for a lawsuit in English or American courts, 'a concrete injury has been pleaded." *Susinno v. Work Out World Inc*., 862 F.3d 346, 351 (3d Cir. 2017) (quoting *Horizon*, 846 F.3d at 639-40). [4]

Two of these cases have dealt with violations of FCRA, and in both cases the Third Circuit found that the alleged statutory violations gave rise to an injury-in-fact, even without additional harm beyond the violation itself. *See Long*, 930 F.3d at 325; *Horizon*, 846 F.3d at 639. In *Horizon*, laptops with unencrypted personal information had been stolen from the business's offices, and the plaintiffs alleged that Horizon violated FCRA by failing to take reasonable measures to protect consumer information. *Horizon*, 846 F.3d at 630-31. As instructed by *Spokeo*, the court conducted a two-part analysis, looking both at the judgment of Congress in elevating harms to be legally cognizable and at the common-law analogues from American and English courts. *Id.* at 639-40. The court analogized the unauthorized disclosure of information to the invasion of privacy torts actionable at common law. *Id.* at 638-39. Second, the court found that dissemination of personal

---

[3] The only case to dismiss the entire suit for lack of jurisdiction was also the court's most recently decided case, *Kamal v. J. Crew Grp. Inc*., 918 F.3d 102 (3d Cir. 2019). As discussed below, *Kamal* was not brought under FCRA and is distinguishable from this case.

[4] Other Circuits since *Spokeo* have articulated the test for injury-in-fact similarly to that of the Third Circuit. *See Strubel v. Comenity Bank*, 842 F.3d 181, 190 (2d Cir. 2016) ("[A]n alleged procedural violation can by itself manifest concrete injury where Congress conferred the procedural right to protect a plaintiff's concrete interests and where the procedural violation presents a 'risk of real harm' to that concrete interest."); *Deher v. Experian Info. Sols., Inc.*, 856 F.3d 337, 346 (4th Cir. 2017); *Lyshe v. Levy* 854 F.3d 855, 861 (6th Cir. 2017).

private information was the exact harm Congress sought to prevent by enacting FCRA. *Id.* at 639. Given this analysis, the court found that the alleged statutory violation alone created an injury in fact, and that the plaintiffs did not need to allege additional harm in order to establish standing. *See id.* at 639 ("[W]ith the passage of FCRA, Congress established that the unauthorized dissemination of personal information by a credit reporting agency causes an injury in and of itself — whether or not the disclosure of that information increased the risk of identity theft or some other future harm.").

In *Long v. SEPTA*, a class of plaintiffs alleged that SEPTA violated their rights under FCRA by failing to provide them with their consumer reports before taking adverse action on their employment actions, and by failing to provide them with the required notices under the statute. *Long*, 903 F.3d at 317. The court found that SEPTA's alleged failure to provide the plaintiffs with their consumer reports before taking adverse action gave rise to standing, as this was "the very harm that Congress sought to prevent, arising from prototypical conduct proscribed by the FCRA" and as the injury in question had a "close relationship" to common-law causes of action for invasion of privacy. *Id.* at 324. Nonetheless, the court found that SEPTA's alleged failure to notify the plaintiffs of their rights under the FCRA did not injure the plaintiffs, since they had clearly become aware of their rights such that they filed the lawsuit within the prescribed time period. *Id.* at 325. It concluded that this was a "'bare procedural violation, divorced from any concrete harm,' that cannot 'satisfy the injury-in-fact requirements of Article III.'" *Id.* at 325 (quoting *Spokeo*, 136 S. Ct. at 1549).

Guided by these decisions, I conclude that Plaintiff has established standing as to two of the alleged violations, specifically violations of sections 1681(e)(b) and 1681(a)(1)(A), but that

the remaining alleged violations are mere procedural violations divorced from any harm, and thus do not give rise to standing.[5]

### A. Reasonable Procedures to Assure Maximum Possible Accuracy of Information— 15 U.S.C. § 1681e(b)

Under FCRA section 1681e(b), "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b). Plaintiff alleges that Sagestream violated this section by including inaccurate information about his discharged bankruptcy debt in his consumer report. Am. Compl. ¶ 63. He alleges that the report states that he owes a balance, and that the balance increased between 2016 and 2017, when in fact the debt was discharged in 2015. *Id.* ¶¶ 8-9. Plaintiff alleges that he has "suffered actual damages, mental anguish, frustration, humiliation, and embarrassment." *Id.* ¶ 73. Plaintiff further argues that the statutory violation itself, by reporting inaccurate information, in and of itself constitutes concrete, albeit intangible, injury. Pl. Opp. to Def. Mot. to Dismiss Pl. First Am. Compl. at 7-9, ECF 11. I agree with Plaintiff that an alleged violation of section 1681e(b) harms an underlying concrete interest and creates an injury-in-fact for standing.

The Third Circuit has instructed that "an alleged procedural violation . . . manifest[s] concrete injury if the violation actually harms or presents a material risk of harm to the underlying concrete interest." *Kamal*, 918 F.3d at 112 (internal citations omitted). I therefore must examine both whether section 1681e(b) of the FCRA protects a concrete interest and if violation of that subsection harms the underlying interest.

---

[5] Beyond standing, Defendants have not otherwise challenged this Court's subject-matter jurisdiction to hear this case. Such jurisdiction exists under 28 U.S.C. § 1331.

This subsection of the statute, mandating that agencies create procedures for the "maximum possible accuracy" of consumer information, protects a concrete interest. FCRA seeks "to ensure fair and accurate credit reporting" and "to protect consumer privacy." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007). Claims stemming from the inaccurate reporting of one's financial information, especially detrimental information, are substantially similar to causes of action recognized at common law such as libel, defamation, and invasion of privacy. *See Long*, 903 F.3d at 324 ("Common law privacy rights were historically understood as being invaded by . . . publicity that unreasonably places the other in a false light before the public.") (quoting the Restatement of Torts (Second)); *see also Spokeo v. Robins*, 136 S. Ct. 1540, 1551-54 (Thomas, J., concurring) (noting that "'[p]rivate rights' have traditionally includes rights of personal security (including security of reputation) . . . courts historically presumed that the plaintiff suffered a *de facto* injury merely from having his personal, legal rights invaded" and suggesting that section 1681e(b) potentially creates a "private duty" to protect an individual's information).

When the Ninth Circuit examined this section of FCRA upon remand from the Supreme Court, it found the same. *See Robins v. Spokeo*, 867 F.3d 1108, 1114 (9th Cir. 2017), *cert. denied*, 138 S. Ct. 931 (2018). There, the plaintiff alleged that a consumer reporting agency published inaccurate information about his age, education, marital status, and wealth. *Id.* at 1111. The court had "little difficulty" in deciding that section 1681e(b) was established to protect concrete interests, since "the threat to a consumer's livelihood if caused by the very existence of inaccurate information in his credit report . . . [and] the likelihood that such information will be important to one of the many entities who make use of such reports . . . especially in light of the difficulty the consumer might have in learning exactly who has accessed (or who will access) his credit report."

*Id.* at 1114.  The court noted that the harm elevated by Congress is similar to the common law causes of action for defamation and libel per se.  *Id.* at 1115.

Defendant's alleged violation of section 1681e(b) actually harms plaintiff's underlying interest in accurate reporting of his financial information.  As noted by the Ninth Circuit "[i]t does not take much imagination to understand how inaccurate reports . . . could be deemed a real harm." *Robins*, 867 F.3d at 1117. Rather, "the real-world implications of material inaccuracies in [consumer] reports seem patent on their face."  *Id.* at 1114.  Plaintiff asserts that he went through bankruptcy proceedings in order to discharge debt, and that a publicly available record of his finances now states that he owes thousands of dollars in debt. Am. Compl. ¶ 8-9.  The harm to Plaintiff stems from the very existence of this inaccurate report, and he has thus established an injury in fact.  *See Horizon*, 846 F.3d at 639-40; *see also Robins*, 867 F.3d at 1117-18 ("[I]n the context of the FCRA, [the] alleged intangible injury is itself sufficiently concrete. It is of no consequence how likely [the plaintiff] is to suffer *additional* concrete harm as well.").

Defendants point to the Third Circuit's decision in *Kamal* to argue that Plaintiff has not established standing, but *Kamal* is distinguishable and does not compel that result.  In *Kamal*, the plaintiff alleged violations of the Fair and Accurate Credit Transactions Act (FACTA), because defendant J. Crew had printed ten digits of his credit card number on receipts for purchases in their stores, and FACTA mandates that stores include no more than five digits on a receipt.  *Kamal*, 918 F.3d at 107-08.  The plaintiff alleged that the printing of extra digits created a concrete harm because it exposed him to an increased risk of identity theft.  *Id.* at 108.  The court found that in drafting the FACTA, Congress did not intend to elevate the procedural harm of printing six extra digits, without additional harm, to constitute an injury-in-fact.  *Id.* at 113.  The court also found that the harm alleged by the plaintiff was not analogous to harms typically actionable at common

10

law. *Id.* at 114.  Because the statutory violation did not itself cause harm, therefore, the court next examined whether the violation created a sufficiently high *risk* of harm such that the plaintiff established standing.  *Id.* at 115.  The court found that only a "highly speculative chain of future events" would lead to identity theft caused by the inclusion of six extra digits on a printed receipt. *Id.* at 116.  The court contrasted the case with *Horizon*, where "it was the alleged injury's close relationship to a traditional harm that showed it was sufficiently concrete to create standing."  *Id.* at 115.  In contrast with *Kamal,* Plaintiff here has alleged a statutory violation that, like those in *Horizon* and *Long*, is sufficiently concrete to create standing and does not rely on a speculative chain of future events.

"In the context of a motion to dismiss . . . the injury-in-fact element is not Mount Everest. The contours of the injury-in-fact requirement, while not precisely defined, are very generous, requiring only that claimant allege some specific, identifiable trifle of injury."  *Horizon*, 846 F.3d at 633.  Here, Plaintiff has alleged a concrete, particularized injury-in-fact and has established standing for defendant's alleged violation of section 1681e(b).

## B.  Reasonable Reinvestigation— 15 U.S.C. § 1681i(a)(1)

For many of the same reasons, I find that Plaintiff has established standing as to the alleged violations of the FCRA regarding the reasonableness of Defendant's reinvestigation.   Under section 1681i(a)(1), when a consumer reporting agency receives notice of a dispute from a consumer of the "completeness or accuracy of any item of information contained in a consumer's file" then the agency "shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate."   15 U.S.C. § 1681i(a)(1)(A).  As part of its reinvestigation, the agency also must "provide notification of the dispute to any person who provided any item of information in dispute" within five days of receiving notice of dispute from

the consumer.  15 U.S.C. § 1681i(a)(2)(A).  Within thirty days of receiving notice of the dispute, the agency must "record the current status of the disputed information, or delete the item from the file" and the agency must provide written notice to the consumer of the results of the reinvestigation "not later than 5 business days after the completion of the reinvestigation."  15 U.S.C. §§ 1681i(a)(1)(A); 1681i(a)(6)(A).  Plaintiff alleges that Defendant violated his rights under this statute by not conducting a reasonable reinvestigation and by failing to follow mandatory timelines during the investigation.  Am. Compl. ¶¶ 64-67.

Whether the agency conducts a reasonable reinvestigation implicates the same concrete interest as described in Section III.A, *supra*, and likewise give rise to standing here.  *See Cortez v. Trans Union*, 617 F.3d 688, 713 (3d Cir. 2010) ("Congress thought this protection so vital to the statutory scheme of the FCRA that it included a specific provision requiring credit reporting agencies to maintain procedures to prevent the reappearance of information that is deleted because it is misleading or inaccurate."); *see also Jones v. Experian Info. Sols., Inc.*, 982 F. Supp. 2d 268, 272 (S.D.N.Y. 2013) (holding that section 1681i(a)(1)(A) "confer[red] upon Plaintiff a statutory entitlement to a reasonable reinvestigation once she dispute[d] an item on her credit report" and that the defendants' alleged failure to fulfill its obligation caused "an actual, concrete injury which is particularized to Plaintiff . . . She may have suffered no actual damages but her rights were violated and Congress has provided statutory damages for any such violation.")

Defendants cite *Becker v. Early Warning Servs., LLC,* No. 19-5700, 2020 WL 2219142, at *1 (E.D. Pa. May 7, 2020), recently decided by my colleague Judge Smith.  In *Becker*, the plaintiff alleged that the defendant had violated the FCRA by listing her account as "closed" instead of as "voluntarily closed" on her consumer report.  Understandably, Judge Smith found that such a semantic discrepancy did not create any harm to the plaintiff.  Specifically, he concluded that "listing an account as closed (as opposed to voluntarily closed)… did "not present a 'material risk of harm' to the plaintiff."  *Id.* at *5.  Here, in contrast, listing inaccurate information about a debt that has actually been discharged, is a real harm, and, more importantly, is exactly the type

of harm the FCRA is meant to protect against. And as part of protecting against that harm, Congress specified a procedure and a timeframe within which to address such disputes. [6]

The other elements of standing also exist as to this alleged violation and the alleged violation of section 1681e(b). Beyond showing that these injuries are concrete, Plaintiff has also shown that they are particularized to him, such that an injury-in-fact exists. Plaintiff alleges that these injuries were caused by Defendant, and that such injuries could be redressed by this Court. Defendant passingly mentioned these latter two elements in one sentence, but as Defendant does not seem to seriously dispute that these two elements exist if an injury-in-fact has been shown, I will not devote more time expounding upon them.

### C. Procedural Violations in Defendant's Letter

Plaintiff's remaining claims relate to the letter he received from Defendant in response to his reinvestigation request. Am. Compl. ¶ 68-69; Letter, ECF 6. He alleges various statutory deficiencies in that letter. *Id.* Because Plaintiff has not alleged that these procedural violations harm or create a "real risk of harm" to a concrete interest, I find that Plaintiff has not established standing on these issues. *See Kamal*, 918 F.3d at 111.

### i. Notice Regarding Reinvestigation Procedures— 15 U.S.C. § 1681i(a)(6)(B)(iii)

When responding to reinvestigation requests, agencies must include "if requested by the consumer, a description of the procedure used to determine the accuracy and completeness of the information shall be provided to the consumer by the agency, including the business name and address of any furnisher of information contacted in connection with such information and the telephone number of such furnisher, if reasonably available." 15 U.S.C. § 1681i(a)(6)(B)(iii).

---

[6] I note that Plaintiff has standing regarding Defendant's alleged violations of the FCRA sections that mandate investigation timelines only insofar as those timelines implicate the reasonableness of the reinvestigation as a whole. If Defendant's reinvestigation resulted in a complete and accurate credit report, then the extended length of the investigation, without more, would likely fail to create a concrete injury. At this stage, because the reinvestigation as a whole is alleged to be unreasonable, I find that Plaintiff has standing as to these alleged procedural violations.

Defendant provided this required notice in its July 2018 letter.  The second paragraph of the letter states "At your request, we will provide you with the name and address, and phone number (if available) of any information provider we contacted and a description of the procedures we used to determine the accuracy and completeness of your disputed information."  Def. Letter, ECF 6.

Plaintiff challenges this, pointing to additional language in the letter, which he alleges renders this notice ineffectual.  Am Compl. ¶ 22-24.  Paragraph three of the letter states, in its entirety:

> Please note that if you disputed information that Sagestream received from Innovis Data Solutions, Inc. (the "Innovis Information"), Sagestream is a reseller of such information and does not maintain a database of Innovis Information to produce new consumer reports. The enclosed reinvestigation results reflect the actions taken, or not taken, by Innovis. If disputed information has not been changed, Innovis verified it. In all cases, we provided Innovis with all the relevant information you provided to us. You may wish to contact Innvois directly to confirm that the files it maintains on you are accurate and complete. Innovis' address, telephone number and website are as follows:
>
> Innovis Data Solutions, Inc.
> P.O. Box 1640
> Pittsburgh, PA 15230-1640
> 1-800-540-2505
> www.innovis.com

Def. Letter, ECF 6. Plaintiff alleges that "[u]pon information and belief, Defendant did not obtain the Lending Club information disputed by Plaintiff from Innovis."  By Plaintiff's logic therefore, this language is intentionally misleading in that consumers would assume they do not need to contact Defendant for a description of the procedure, because the information has already been given.  Am Compl. ¶ 24.  Defendant responds that because the required notice is included in the letter, Plaintiff cannot claim injury.

By including the required statutory notice in its letter.  Defendant complied with the statute. But, even if the inclusion of additional, potentially extraneous information, could be considered a procedural violation, it would be one divorced from any harm and thus insufficient to establish standing.  Plaintiff does not allege that he attempted to follow up with Sagestream, as was his statutory right, and was unable to do so.  Rather, he states that an average consumer would think there was no point in contacting Defendant, because the notice makes it sound as though all information comes from Innovis.  Am. Compl. ¶ 24.  In the same paragraph, however, Plaintiff states that "upon information and belief," the information did not come from Innovis. *Ibid.* Plaintiff therefore seems to be aware of his rights, bringing this case within *Long v. SEPTA*, supra. There, the plaintiffs were able to exercise their rights notwithstanding the defendant's failure to provide notice of those rights and they therefore could not allege a concrete injury.  903 F.3d at 325.  As in *Long*, the violation alleged here is a "bare procedural violation, divorced from any concrete harm." *Id.* (quoting *Spokeo*, 136 S. Ct. at 1549); *see also Groshek v. Time Warner Cable, Inc.*, 865 F.3d 884, 887 (7th Cir. 2017) (holding that plaintiff did not establish standing for a procedural violation under the FCRA because plaintiff's "complaint contained no allegation that any of the additional information caused him to not understand the consent he was giving; no allegation that he would not have provided consent but for the extraneous information on the form . . . Instead, he simply alleged that [defendant's] disclosure form contained extraneous information. We conclude that [plaintiff] has alleged a statutory violation completely removed from any concrete harm or appreciable risk of harm."); *Deher v. Experian Info. Sols., Inc.*, 856 F.3d 337, 347 (4th Cir. 2017) (holding that an agency's failure to list the correct name of the servicer on a credit report did not create standing when the plaintiff was able to receive the services he needed notwithstanding the error).

Plaintiff points to *Wilson v. Quadramed Corp.* for the proposition that "more is required than the mere inclusion of a statutory notice, the notice must also be conveyed effectively."  225 F.3d 350, 354 (3d Cir. 2000).  *Wilson* is not controlling, however, as that case was brought under the Fair Debt Collection Practices Act and relied on the "least sophisticated debtor" standard to analyze claims.  *Id.* at 354.  Moreover, the court there found that the notice at issue, although confusing, was in fact satisfactory because "the least sophisticated would not be induced to overlook his statutory rights" to dispute the debt. *Id.* at 356.  *Long* controls the outcome here.

### ii. Notice Regarding Disputed Information— 15 U.S.C. § 1681i(d)

Under section 1681i(d) of the FCRA, after "any deletion of information which is found to be inaccurate or whose accuracy can no longer be verified or any notation as to disputed information," the agency "shall, at the request of the consumer, furnish notification that the item has been deleted or the statement, codification or summary pursuant to subsection (b) or (c) to any person specifically designated by the consumer who has within two years prior thereto received a consumer report for employment purposes, or within six months prior thereto received a consumer report for any other purpose, which contained the deleted or disputed information."  15 U.S.C. § 1681i(d).

The letter sent to Plaintiff stated (in all capital letters), that

> If any information has been deleted because it has been found to be inaccurate or because its accuracy can no longer be verified, then, upon your request, we will furnish (A) notification that the item has been deleted or (B) a summary of your statement of dispute to any person specifically designated by you who has recently received a consumer report on you from us, which contained the deleted or disputed information.

Def. Letter, ECF 6.  Plaintiff takes issue with two points of this disclosure.  First, Plaintiff alleges that Defendant's use of the word "recently" instead of "two years" or "six months" violates the

FCRA.  Am. Compl. ¶ 28-29.  It is not clear that the substitution of the word "recently" is a violation at all, and Plaintiff has not cited any authority to support such a proposition.  And, as with the procedural violation discussed above, even if it could be deemed a violation, it would be a procedural violation divorced from any harm, as Plaintiff has not alleged any harm or risk of harm stemming from this phrasing.

Second, Plaintiff alleges that the notice violates FCRA because the first sentence states that the agency will furnish notice only if information has been deleted or whose accuracy can no longer be verified, but not if the plaintiff has merely disputed the information.  Am. Compl. ¶ 31-32.  Although the first sentence is somewhat confusing, the same paragraph also states that the agency will furnish "a summary of your statement of dispute," and so, as above, it is not clear that there is any violation at all.  Def. Letter, ECF 6.

For each of these three alleged procedural violations, Plaintiff has not made the necessary threshold showing for standing.  First, Plaintiff has not made clear that, as interpreted by courts, these discrepancies are in fact violations of FCRA.  Second, Plaintiff has not shown that the alleged violations of these statutes create harm such that the violation itself represents an injury-in-fact.  Plaintiff does not argue that the harms created by these procedural violations were elevated by Congress in crafting FCRA, and does not point to any common-law analogue for these procedural harms.  Moreover, the only cases Plaintiff cites to in relation to these subsections arise under the FDCPA or the Truth in Lending Act (TILA), not the FCRA. *See Strubel*, 842 F.3d at 185; *Grubb v. Green Tree Servicing, LLC*, No. 13-07421, 2017 WL 3191521, at *1 (D.N.J. July 27, 2017); *Pisarz v. GC Servs., L.P.*, No. 16-4553, 2017 WL 1102636, at *1 (D.N.J. Mar. 24, 2017).  Under *Kamal*, Plaintiff must therefore show that these procedural violations create a real risk of harm to an underlying concrete interest.  *Kamal*, 918 F.3d at 111.  Plaintiff has not made this showing.

Because Plaintiff lacks standing as to these allegations, I lack subject-matter jurisdiction to consider them and therefore dismiss paragraphs 68 through 69 of the First Amended Complaint without prejudice.  *See Id.* at 119 ("[T]he case should be dismissed without prejudice because the District Court lacked jurisdiction.") (citing *Cottrell v. Alcon Labs.*, 874 F.3d 154, 164 n.7 (3d Cir. 2017)).

## IV.      Motion to Dismiss for Failure to State a Claim

In addition to moving to dismiss for lack of subject-matter jurisdiction, Defendant moves to dismiss Plaintiff's First Amended Complaint in its entirety for failure to state a claim upon which relief can be granted.  In this Circuit, motions to dismiss under Federal Rule of Civil Procedure 12(b)(6) are governed by the well-established standard set forth in *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).  Defendant's motion is granted as to Plaintiff's claims that allege Defendant acted as a reseller.  Defendant's motion is denied as to all other claims.

### A.  Reasonable Procedures to Assume Maximum Possible Accuracy of Information — 15 U.S.C. § 1681e(b)

Plaintiff alleges that Defendant both negligently and willfully violated 15 U.S.C. § 1681e(b) by failing to "follow reasonable procedures to assure maximum possible accuracy of the information concerning" Plaintiff in his consumer report.  *See* 15 U.S.C. § 1681e(b); Am. Compl. ¶ 63.  As a threshold issue, Defendant disputes that the document containing inaccurate information is a "consumer report."  A consumer report is

> [A]ny written, oral, or other communication of any information by a [CRA] bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for (A)credit or insurance to be used primarily for personal, family, or household purposes;

(B)employment purposes; or (C)any other purpose authorized under section 1681b of this title.

15 U.S.C. § 1681a(d)(1).  A consumer report is distinct from a consumer file, and only the former is protected by the FCRA sections at issue. *See Becker*, 2020 WL 2219142 at *8 n.7 (contrasting consumer reports, with a consumer "file" which  is "the agency's file which it provides to the consumer, not third parties, and contains information solely as to transactions or experiences between the consumer and the person making the report."); *Id.* at *8 (dismissing claim because the plaintiff did not allege that the file had been shared with third parties). Defendant argues that Plaintiff has not alleged errors within a consumer report, and that this claim should likewise be dismissed.  However, Plaintiff alleges that Defendant "issued credit reports to third parties with the erroneous information regarding Lending Club." Am. Compl. ¶ 63.  Plaintiff has therefore alleged that Defendant issued a consumer report, and I decline to dismiss Plaintiff's claim on that basis.

Negligent noncompliance with section 1681e(b) contains four elements: "(1) inaccurate information was included in a consumer's credit report; (2) the inaccuracy was due to defendant's failure to follow reasonable procedures to assure maximum possible accuracy; (3) the consumer suffered injury; and (4) the consumer's injury was caused by the inclusion of the inaccurate entry." *Cortez*, 617 F.3d at 708 (3d Cir. 2010) (citing *Philbin v. Trans Union Corp.*, 101 F.3d 957, 963 (3d Cir. 1996)).

The first issue to decide is whether the information in the report is inaccurate. "Information is inaccurate when it is either 'patently incorrect' or 'misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions.'" *Schweitzer v. Equifax Info. Sols., LLC*, 441 F. App'x 896, 902 (3d Cir. 2011) (citations omitted). Plaintiff here sufficiently alleges that the debt information is inaccurate.

"Judging the reasonableness of a credit reporting agency's procedures involves weighing the potential harm from inaccuracy against the burden of safeguarding against such inaccuracy." *Cortez*, 617 F.3d at 709. When evaluating agency procedures under this subsection, the Third Circuit has made clear that the standard from section 1681e(b) of "maximum possible accuracy" imposes a high burden for credit reporting agencies:

> Moreover, the distinction between "accuracy" and "maximum possible accuracy" is not nearly as subtle as may at first appear, it is in fact quite dramatic. For example, in *Pinner v. Schmidt*, 805 F.2d 1258 (5th Cir. 1986), the Court of Appeals for the Fifth Circuit described that distinction as the difference between reporting that "a person was 'involved' in a credit card scam" and reporting that the consumer "was in fact one of the victims of the scam." *Id.* at 1263. The former statement was undoubtedly true as the consumer had been "involved" in the scam. It was also woefully misleading because it did not inform people that she was involved as a victim of the scam, and not as the perpetrator.

*Id.* In the context of summary judgment, the Third Circuit has recognized that a plaintiff may show violations of this subsection by: (1) "produc[ing] some evidence beyond a mere inaccuracy in order to demonstrate the failure to follow reasonable procedures"; (2) "that the jury may infer the failure to follow reasonable procedures from the mere fact of an inaccuracy"; or (3) "that upon demonstrating an inaccuracy, the burden shifts to the defendant to prove that reasonable procedures were followed." *Cortez*, 617 F.3d at 710 (citing *Philbin,* 101 F.3d at 965). Significantly, "[t]he reasonableness of a credit reporting agency's procedures is 'normally a question for trial unless the reasonableness or unreasonableness of the procedures is beyond question.'" *Id.* at 709.

At this stage, Plaintiff has alleged a factual inaccuracy and has alleged that this inaccuracy was caused by Defendant's failure to institute reasonable procedures. Am. Compl. ¶ 63, thereby stating a plausible claim for relief. *Fowler*, 578 F.3d at 211 (internal quotations omitted). Defendant's motion to dismiss this claim is therefore denied.

**B.  Reasonable Reinvestigation— 15 U.S.C. § 1681i**

When a consumer notifies a credit reporting agency of potentially inaccurate information in his or her credit file, the CRA is obligated to complete a "reasonable" "reinvestigation within thirty days."  15 U.S.C. § 1681i(a)(1)(A).  This reinvestigation "must consist of something more than merely parroting information received from other sources" and so a reinvestigation "that merely shifts the burden back to the consumer . . . cannot fulfill the obligations contemplated by the statute."  *Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir. 1997).  Once an agency is on notice, through a consumer contact, that there is information that may not be correct, the agency bears "grave responsibilities . . . to ensure the accuracy of that information."  *Id.* (citing 15 U.S.C. § 1681(a)(4)).  In order to establish that an agency is liable under this provision of the FCRA, the plaintiff "must establish that [the agency] had a duty [to reinvestigate a dispute], and that it would have discovered a discrepancy had it undertaken a reasonable investigation."  *Cortez*, 617 F.3d at 713.

Plaintiff alleges that he alerted Defendant of inaccurate information on his credit report, and that the reinvestigation Defendant conducted upon receiving this notice was not reasonable. Am. Compl. ¶ 65.  The letter sent to Plaintiff is unclear as to whether Defendant itself conducted a reinvestigation to the source material, or whether it wholly relied on Innovis.  ECF 6.  In either case, "it is clear that a reasonable reinvestigation must mean more than simply including public documents in a consumer report or making a cursory investigation into the reliability of information that is reported to a potential creditor."  *Cortez*, 617 F.3d at 713.  And in cases where the consumer has alerted the agency to a potential inaccuracy, the agency may have "a duty to go beyond the original source" in conducting its reinvestigation.  *Cushman v. Trans Union Corp.*, 115

21

F.3d 220, 225 (3d Cir. 1997). Again, Plaintiff has alleged facts sufficient to show a plausible claim for relief, and Defendant's motion to dismiss this claim is denied. *See Fowler*, 578 F.3d at 211.

### C. Willful and Negligent Allegations— 15 U.S.C. §§ 1681n and 1681o

Plaintiff alleges that Defendant violated the FCRA both negligently and willfully. Am. Compl. ¶ 63-65. Under section 1681n of the FCRA, if an agency "willfully fails to comply with any requirement imposed under [the FCRA]" the agency is liable for actual damages sustained by the consumer as a result of the failure" or for damages "of not less than $100 and not more than $1,000." 15 U.S.C. § 1681n(a)(1)(A). The agency may also be liable for punitive damages and for attorney's fees. 15 U.S.C. § 1681n(a)(2)-(3). Under section 1681o, if an agency "is negligent in failing to comply with any requirement imposed under [the FCRA]" then the agency is liable for "any actual damages sustained by the consumer as a result of the failure" as well as attorney's fees. 15 U.S.C. § 1681o(a).

Plaintiff alleges that Defendant acted willfully. Specifically, Plaintiff alleges that the letter sent to consumers was an "intentional act to mislead the consumer." Am. Compl. ¶ 30. As I have dismissed the claims relating to the letter for lack of standing, however, I will focus on the remaining claims, related to the procedures of Defendant and the reinvestigation.

The Supreme Court held that in the context of the FCRA, "willful means both knowingly and in reckless disregard of the FCRA's requirements." *Safeco Ins.,* 551 U.S. 47, 57 (2007). An agency may act willfully "by adopting a policy with reckless disregard of whether it contravenes a plaintiff's rights under the FCRA." *Cortez*, 617 F.3d at 721; *see also Cushman* 115 F.3d at 227 ("If [plaintiff] can prove, as she argues, that [the agency] adopted its reinvestigation policy either knowing that policy to be in contravention of the rights possessed by consumers pursuant to the

22

FCRA or in reckless disregard of whether the policy contravened those rights, she may be awarded punitive damages.").

At this point, it is too early to dismiss these claims, until  discovery yields relevant information on the procedures employed by Defendant.  The Third Circuit has made clear that the "reasonableness" of an agency's procedures is often a question for the jury, and without assessing that threshold question, it is too early to decide whether any alleged violation would be willful or negligent. *Cortez*, 617 F.3d at 709.

### D.  Reseller Allegations— 15 U.S.C. § 1681i(f)

A consumer reporting agency is a "reseller" under the FCRA if it "(1) assembles and merges information contained in the database of another consumer reporting agency or multiple consumer reporting agencies concerning any consumer for purposes of furnishing such information to any third party, to the extent of such activities; and (2) does not maintain a database of the assembled or merged information from which new consumer reports are produced."  15 U.S.C. § 1681a(u).

Plaintiff alleges, in the alternative, that if Defendant was not acting as a credit reporting agency in this instance, then it was acting as a reseller and is liable under the governing provisions for resellers.  Am. Compl. ¶ 70-72.  Defendant asserts that it was not acting as a reseller and that even if it were, resellers are exempt from reinvestigation requirements, and so all claims against Defendant as a reseller should be dismissed. Def. Mot. To Dismiss at 12-13.

SageStream is correct. Under section 1681i(f), a reseller must provide the same disclosures in communications with consumers as a consumer reporting agency but is otherwise exempt from reinvestigation requirements.  15 U.S.C. § 1681i(f).  As discussed above, I have concluded that Plaintiff does not have standing to challenge the alleged deficiencies in the letter at issue.  A reseller would not be liable under the remaining sections, 1681i(a)(1)(A) and 1681e(b).  Although

Defendant could be liable as a reseller for not completing the reinvestigation within prescribed timelines, *see* 15 U.S.C. § 1681i(f)(2), I have also concluded that violation of timelines alone would not create an injury-in-fact.  Consequently, this claim would fail even if Defendant were a reseller. *See* note 6, *supra*.  Plaintiff's allegations against Defendant as a reseller are therefore dismissed.

## V.     Conclusion

For the reasons above, Defendant's motion to dismiss for lack of subject-matter jurisdiction is granted in part and denied in part.  Further, Defendant's motion to dismiss for failure to state a claim is granted in part and denied in part.  An appropriate order follows.

 /s/ Gerald Austin McHugh
United States District Judge